**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WILLIE MOLINA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 08-3361 |
| | § | |
| | § | |
| TRANSOCEAN DEEPWATER INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Willie Molina sued his former employer, Transocean Deepwater Inc., alleging disability

discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112.

Molina did not allege that he was disabled, as the ADA defines that term.  Instead, he alleged that

Transocean violated the ADA by regarding him as disabled and refusing to allow him to return to

his job for that reason.  Transocean responded that it did not regard Molina as disabled but instead

believed that he had a temporary impairment—recuperation from open-heart surgery—that made

him unfit to perform his job in the short term.  After discovery, Transocean moved for summary

judgment.[1]  Based on a careful review of the pleadings; the motion, response, reply, and surreply;

the record; and the applicable law, this court grants Transocean's summary judgment motion and,

by separate order, enters final judgment.  The reasons are explained in detail below.

---

[1] Transocean's motion for summary judgment is filed at Docket Entry No. 32.  Molina responded, (Docket Entry No. 37), Transocean replied, (Docket Entry No. 39), and Molina surreplied, (Docket Entry No. 41).

## I.     Background

Molina worked as an assistant subsea supervisor for one of Transocean's offshore rigs. In 2006, Molina's supervisors informed the rig manager that Molina was underperforming and recommended that he be placed in another position. (Docket Entry No. 32 at 2). On January 18, 2007, the manager asked Molina to accept a position as either a floorhand or a motor operator. (Docket Entry No. 33, Ex. 1, Molina Depo. at 29). When Molina left the rig at the end of his 14-day shift, he had neither accepted nor rejected the offer. (*Id.* at 31).

Shortly after he left the rig at the end of his shift, Molina consulted several different physicians. Molina was told that he suffered from adult Attention Deficit Disorder (ADD) and memory lapses. (*Id.* at 34). Molina believed that these conditions were affecting his ability to work. (*Id.*). Effective January 26, 2007, Molina took disability leave from Transocean due to these conditions. (Docket Entry No. 33-1, Ex. 3A). On January 30, 2007, Laurie Rebman, Transocean's Medical Services Administrator, sent Molina a letter confirming his leave and characterizing this impairment as "[a] serious health condition that makes [him] unable to perform the essential[] functions for [his] job." (Docket Entry No. 37-3, Ex. 5 at 2). During Molina's leave, Transocean paid him 80% of his salary. (Docket Entry No. 32 at 2).

Transocean's policy allows employees up to six months of medical leave. (Docket Entry No. 33, Ex. 2B). At the end of the six months, if the employee is medically incapable of returning to work, his employment automatically terminates or the employee may be eligible for long-term disability benefits. (*Id.*). On April 17, 2007, Sarah Pruett, Transocean's Benefits Assistant, sent Molina a letter notifying him that his medical leave would end on July 27, 2007. (Docket Entry No. 33-1, Ex. 3A).

Transocean's "Leave of Absence Policy" states: "Employees are required to provide a full duty medical release from their health care provider in order to return to work . . . Employees may be required to visit a Company doctor or participate in a work hardening program (at the Company's expense) prior to returning to work." (Docket Entry No. 33, Ex. 2B at 1). Molina alleges that it is the "company's practice and procedure to take the word of an employee's doctor." (Docket Entry No. 37 at 7). Transocean asserts that under its policy, when an employee is seeking to return to work after a medical leave, the company's medical director, Dr. Kotler, must "sign off." (Docket Entry No. 37-2, Ex. 3, O'Shoney Depo. at 38).

When Molina met with his physician about his ADD and memory lapses, he was referred to Dr. Lawrence Widman, a cardiologist, to determine whether a stimulant should be prescribed. (Docket Entry No. 33, Ex. 1, Molina Depo. at 40–41). Dr. Widman diagnosed an abnormal heart beat that required open-heart surgery to correct. (*Id*. at 43–44). Dr. Widman referred Molina to Dr. James Knight, a cardiothoracic surgeon. (*Id*. at 45). Dr. Knight performed the surgery on June 13, 2007. (Docket Entry No. 4 at 2; Docket Entry No. 33, Ex. 1, Molina Depo. at 42–43). There is no evidence that Molina knew about this heart condition or that he would need surgery when he began his disability leave.

On July 5, 2007, Dr. Knight sent Transocean a letter stating that Molina would be unable to work for at least eight weeks. (Docket Entry No. 33-1, Ex. 5A). Steve O'Shoney, Transocean's Medical Services Manager, called Dr. Knight to clarify whether Molina's return date would be eight weeks after June 13, the date of the surgery, or eight weeks after July 5, the date of the letter. (Docket Entry No. 33, Ex. 6, O'Shoney Depo. at 41–42). Dr. Knight's office informed O'Shoney that Molina would not be able to return until August 8, 2007, eight weeks after his surgery. (*Id*. at

42).

On July 9, 2007, Molina applied for long-term disability benefits.  (Docket Entry No. 33-1, Ex. 3B).  In his application, Molina stated that he would not be able to return to work until September 13, 2007.  (*Id.*).[2]  On July 24, 2007, Molina met with his cardiologist, Dr. Widman. (Docket Entry No. 33, Ex. 1, Molina Depo. at 63).  After meeting with Molina, Dr. Widman sent Transocean a work release form stating that Molina would be able to return to work on July 26, 2007, one day before his disability leave was to expire.  (Docket Entry No. 33-1, Ex. 5B).  At that point, Transocean had conflicting reports from Dr. Knight, Dr. Widman, and Molina himself as to whether Molina would be able to return to work on July 26, August 8, or September 13.

Due to this confusion, O'Shoney contacted Molina.  (Docket Entry No. 33, Ex. 1, Molina Depo. at 73).  The record is unclear as to precisely when this conversation between O'Shoney and Molina took place.  According to Molina, O'Shoney told Molina that the company did not want him to return to work until August 8, the release date given by Dr. Knight, the doctor who performed the surgery.  (*Id.* at 79–80).  O'Shoney told him that Dr. Kotler wanted to take the full eight weeks and then evaluate Molina personally.  (*Id.* at 80–81).  O'Shoney told Molina that Transocean would fly him to New Orleans to be examined by company doctors.  (*Id.* at 81).  This examination never happened.  (Docket Entry No. 37 at 5).

On July 27, 2007, Rebman notified Donna Schaaf, Transocean's Lead Human Resources Representative, that Molina's six-month leave had ended.  (Docket Entry No. 33-1, Ex. 5C). Rebman processed the termination of Molina's short-term disability benefits, and Schaaf processed

---

[2] In its motion for summary judgment, Transocean states that on this application, Molina indicated that he would be unable to work until September 13, 2009.  (Docket Entry No. 32 at 5). The application states a return-to-work date of September 13, 2007.  (Docket Entry No. 33-1, Ex. 3B).  The reference to 2009 in Transocean's motion appears to be a clerical error.

the termination of Molina's employment.  (Docket Entry No. 32 at 5–6).  Molina's termination of

employment was automatic under Transocean policy.  (Docket Entry No. 32 at 6).  After his

termination, Molina received long-term disability benefits until October 31, 2007.  (Docket Entry

No. 33-1, Ex. 3C).

Molina began working for Millsap Waterproofing on August 8, 2007.  (Docket Entry No.

33-2, Ex. 9).  On August 10, 2007, Rebman told Molina that his employment at Transocean had

automatically terminated on July 27.  (Docket Entry No. 33, Ex. 1, Molina Depo. at 81).  Rebman

told Molina that he would need to reapply if he wanted to work for Transocean.  (*Id*. at 82–83).

O'Shoney reiterated the same message in a later conversation.  (*Id*. at 83).  Eight months after these

conversations, Molina reapplied to Transocean for a job as subsea supervisor, which was a level

above his past positions at the company.  (Docket Entry No. 33, Ex. 2E).  Transocean rejected his

application.  (*Id*.)  On November 12, 2008, Molina filed this suit.  After discovery, Transocean

moved for summary judgment.

Transocean argues that Molina suffered from, and was regarded as suffering from, a

temporary impairment—postsurgery recuperation that was expected to last around eight weeks.

(*Id*.).  Transocean argues that the undisputed facts show that as a matter of law, Molina was neither

disabled nor regarded as disabled and that his employment was terminated because his leave had

ended and he did not submit to the necessary examination to be allowed to return to work.

Transocean points out that Molina did not reapply for over eight months and when he did so, he

applied for a job for which he was not qualified.

Molina does not argue that he suffered from a disability under the ADA.  He instead

contends that Transocean believed that he had a disability and did not allow him to return to work

for this reason.  Molina emphasizes the fact that even after receiving Dr. Widman's notice that he could return to work before the end of his short-term medical leave period, Transocean did not allow him to return.  Molina argues that there is a fact issue as to whether Transocean did not allow him to return because it believed he had a disability.

## II.     The Applicable Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact but need not negate the elements of the nonmovant's case.  *Exxon Corp. v. Oxxford Clothes XX, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008).

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings.  *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000).  The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *See id.*  The nonmovant must do more than show that there is "some metaphysical doubt as to the material facts."  *Little v. Liquid*

*Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant.  *Id.* at 255; *Marathon E.G. Holding Ltd. v. CMS Enters. Co.*, 597 F.3d 311, 316 (5th Cir. 2010).

### B.    Summary Judgment Under the ADA

Section 12112(a) of the ADA states:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).[3]  The elements of a *prima facie* showing of disability discrimination under the ADA are that the plaintiff is a "qualified individual" with a "disability" as defined by the ADA and suffered an adverse employment action because of the disability.  *See Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999).  If the plaintiff makes a *prima facie* showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003); *see Manning v. Chevron Chem. Co*, 332 F.3d 874, 881 (5th Cir. 2003); *Sherrod v. Am. Airlines, Inc*., 132 F.3d 1112, 1122 (5th Cir. 1998).  If the defendant

---

[3]  Molina filed this lawsuit on November 12, 2008.  Congress enacted the ADA Amendments Act of 2008, effective January 1, 2009.  Pub. L. No. 110-325, 122 Stat. 3553 (2008).  Because the amendments do not apply retroactively, they are inapplicable to this case.  *See EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

satisfies this burden, the plaintiff has the burden of showing that the proffered reasons are pretextual. *Gowesky*, 321 F.3d at 511.  If the claim reaches the pretext stage, the issue is whether the totality of the evidence, including the evidence raised at the *prima facie* case and pretext stages, raises a genuine issue of disputed fact material to determining whether the defendant fired or took other adverse action against the plaintiff because of his disability.  *See Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725; *Anderson*, 477 U.S. at 255.  "To obtain the right to present his case to a jury, a plaintiff must, at minimum, adduce evidence upon which a rational jury could, as a matter of law, find in his favor."  *Gowesky*, 321 F.3d at 512.

      **C.**    **Disability**

      "As a threshold requirement in an ADA claim, the plaintiff must . . . establish that he has a disability."  *Rogers v. Int'l Marine Terminals*, 87 F.3d 755, 758 (5th Cir. 1996).  The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment."  42 U.S.C. § 12102(2).  "A plaintiff cannot assert that his employer is required to make reasonable accommodations to his physical or mental limitation until he satisfies the test for disability discrimination."  *Lindsey v. Chevron USA Inc.*, 51 F. App'x 929, No. 02-60056, 2002 WL 31415255, at *4 (5th Cir. 2002).  The only argument that Molina raises is that he was regarded by Transocean as having such a physical impairment.  (Docket Entry No. 37).

      Under the ADA, a plaintiff is "regarded as" disabled if he: "(1) has an impairment which is not substantially limiting but which the employer perceives as . . . substantially limiting . . . ; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a

8

substantially limiting impairment." *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 475 (5th Cir. 2006). Molina's argument is that he had an impairment which was "not substantially limiting but which [Transocean] perceive[d] as . . . substantially limiting." *Id.*

## III.    The ADA Claim

### A.    The Summary Judgment Record

In support of its motion for summary judgment, Transocean attached excerpts from Molina's deposition, (Docket Entry No. 33, Ex. 1); an affidavit of Donna Schaaf, Transocean's Lead Human Resources Representative, and associated attachments, (*Id.*, Ex. 2); an affidavit of Sarah Pruett, Transocean's Benefits Assistant, and associated attachments, (Docket Entry No. 33-1, Ex. 3); the expert report of Dr. Donald L. Patrick, (*Id.*, Ex. 4); an affidavit of Laurie Rebman, Transocean's Medical Services Administrator, and associated attachments, (*Id.*, Ex. 5); excerpts from the deposition of Steve O'Shoney, Transocean's Medical Services Manager, (*Id.*, Ex. 6); excerpts from the deposition of Laurie Rebman, (Docket Entry No. 33-2, Ex. 7); excerpts from the deposition of Donna Schaaf, (*Id.*, Ex. 8); and employment records from Millsap Waterproofing, Inc., (*Id.*, Ex. 9).

In response, Molina attached excerpts from his own deposition, (Docket Entry No. 37-2, Ex. 1); excerpts from the deposition of Laurie Rebman, (*Id.*, Ex. 2); excerpts from the deposition of Steve O'Shoney, (*Id.*, Ex. 3); excerpts from the deposition of Donna Schaaf, (*Id.*, Ex. 4); a letter dated January 30, 2007 from Transocean to Molina, (Docket Entry No. 37-3, Ex. 5); Transocean's Leave of Absence Policy, (*Id.*, Ex. 6); Dr. Widman's Medical Release, (*Id.*, Ex. 7); an undated and unsigned letter from Dr. Kotler, Transocean's Medical Director, (*Id.*, Ex. 8); and excerpts of Molina's medical records, (*Id.*, Ex. 9).

Molina has filed a motion to exclude the report of Dr. Donald L. Patrick, an expert

designated by Transocean.  (Docket Entry No. 38).  As Transocean points out in its response to this motion, this report is "not important to any material issue in dispute for purposes of summary judgment."  (Docket Entry No. 40 at 2).  Molina's motion to exclude is denied as moot.

###    B.    Analysis

There is no evidence in the record to suggest that Transocean thought Molina's impairment was anything other than an eight-week recovery from open-heart surgery.  The impairment at issue is Molina's recovery from his heart surgery.  Molina does not argue that Transocean perceived him as disabled due to his adult ADD and memory lapses.  Nor does he argue that the ADD and memory lapses amounted to an actual disability under the ADA.

Transocean received conflicting reports as to when Molina could return to work after his open-heart surgery.  Dr. Knight, the cardiothoracic surgeon who performed the surgery, said eight weeks from the date of surgery, or August 8, (Docket Entry No. 33-1, Ex. 5A); Dr. Widman, Molina's cardiologist, said six weeks, or July 26, (*Id.*, Ex. 5B); and Molina, in his application for long-term disability benefits, said approximately thirteen weeks, or September 13, (*Id.*, Ex. 3B). Molina argues that because Transocean did not accept the six-week time frame given by Dr. Widman, it regarded him as disabled.  Molina dismisses Transocean's argument that it believed Molina could be capable of returning to work in eight weeks but not six weeks.  (Docket Entry No. 37).

Molina cites an undated and unsigned letter from Dr. Kotler to Glen Shropshire, O'Shoney's superior, in which Dr. Kotler stated that "it would require at least 6-8 weeks" for an open-heart surgery patient to return to work.  (*Id*. at 6, n.2).  Molina argues that "the fact that even Transocean believed or believes *6 weeks* may be sufficient to recover from open heart surgery further implicates

10

as illegal Transocean's decision to reject Dr. Widman's release." (*Id.*).  Molina ignores the rest of

the letter, in which Dr. Kotler stated as follows:

> It is my opinion for someone working in a remote area such as a
> deepwater drilling platform we are better off waiting the full 8 weeks
> because of the potential for an emergency evacuation or any other
> crisis that could occur in that environment, not to mention that most
> of these fellows have very strenuous physical demands placed on
> them on a daily basis.  The reason that they see me after getting
> clearance from their own physician is that I understand the demands
> of work force offshore.  I have found many times that the personal
> physician of the employee does not have a clue of what these
> employee[s] are doing for a living . . . .

(Docket Entry No. 37-3, Ex. 8).  This letter is another reason—besides the fact that Molina's own

surgeon specified an eight-week recovery period—that Transocean believed Molina could return

after eight weeks but not after six.  There is no evidence that Transocean regarded Molina as

suffering from an impairment expected to last longer than approximately eight weeks.

Molina argues that "even though it was the company's practice and procedure to take the

word of an employee's doctor," Transocean still rejected Dr. Widman's medical release.  (Docket

Entry No. 37 at 7).  The record does not show that it is Transocean's practice and procedure to take

the word of an employee's doctor when the employee is seeking to return from medical leave.

(Docket Entry No. 37-2, Ex. 2, Rebman Depo. at 17).  Transocean's practice and procedure for

allowing an employee to return to work from disability leave required Dr. Kotler's approval.

(Docket Entry No. 37-2, Ex. 3, O'Shoney Depo. at 38).  Transocean's policy did not require it to

accept Dr. Widman's statement about when Molina was expected to be able to return to work over

Dr. Knight's statement.

The fact that Dr. Kotler did not have the opportunity to examine Molina is not evidence that

Transocean regarded Molina as disabled.  Molina alleges that O'Shoney told him that Transocean

would fly him to New Orleans for a medical evaluation.  (Docket Entry No. 33, Ex. 1, Molina Depo. at 81).  The "Leave of Absence Policy" stated that an employee "may be required to visit a Company doctor" before returning to work.  (*Id.*, Ex. 2B at 1).  Transocean's position that it wanted to have its own doctor evaluate Molina after the eight weeks is consistent with its policy and with O'Shoney's statement to Molina.  There is no evidence that Molina took any steps to set up an appointment with Dr. Kotler.  Nor is there any evidence suggesting that Transocean would not have rehired Molina after his eight-week recovery period if Dr. Kotler had approved him as medically fit.

Molina does not dispute the evidence that even after his employment ended, Transocean gave him the opportunity to reapply.  (Docket Entry No. 33, Ex. 1, Molina Depo. at 81, 83).  Molina did not take this opportunity but instead continued to receive long-term disability payments until October 31, 2007.  (Docket Entry No. 33-1, Ex. 3C).  Molina eventually reapplied to Transocean, but not until eight months after his employment had automatically terminated because his six-months of medical leave expired.  And when Molina did reapply, he sought a position a level above his past jobs at the company.  (Docket Entry No. 33, Ex. 2E).  The fact that Transocean rejected this application is irrelevant to determining whether Transocean had regarded him as disabled eight months earlier.

The fact that Molina's short-term leave form stated that he had "[a] serious health condition that makes [him] unable to perform the essential functions for [his] job," (Docket Entry No. 37-3, Ex.5), does not create a fact issue.  When, as here, "[t]he legal definition of a disability under the ADA is different from the eligibility criterion for [an employer's] short term disability plan," the fact that an employer previously granted an employee's request for short- term disability leave does

not show that the employer regarded that employee as disabled.  *Bennett v. Calabrian Chem. Corp.*, 126 F. App'x 171, 172 (5th Cir. 2005).  Transocean's definition of a disability required for short-term disability leave is different from the ADA's definition.  Moreover, Molina originally applied for short-term leave due to his problems with ADD and memory lapses.  The impairment at issue in this case is Molina's recovery from heart surgery.  The original short-term leave form is irrelevant to whether the impairment at issue was a disability or was perceived as a disability under the ADA.

The surgeon who performed the open-heart surgery told Transocean that Molina would be unable to return to work for eight weeks.  That eight-week impairment is not a disability under the ADA.  "Merely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).  To be disabled requires more: "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  *Id.* at 198.  The impairment must have  an impact that is "permanent or long term."  *Id.*; *see also Hinojosa v. Jostens Inc.*, 128 F. App'x 364, 368 (5th Cir. 2005).  "The term 'disability' does not include temporary medical conditions, even if those conditions require extended leaves of absence from work."  *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997) (citation omitted); *see Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1051 (5th Cir. 1998) (holding that a condition lasting four months was temporary and did not fall under the ADA); *Burns v. Air Liquide Am., L.P.*, 515 F. Supp. 2d 748, 758 (S.D. Tex. 2007) (holding that a condition lasting six weeks was "not of sufficient duration or impact to constitute a disability under the ADA"); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998) ("[A] seven-month impairment of [plaintiff's] ability to work . . . . is of too short a duration

and too vague an extent to be 'substantially limiting.'").   An eight-week recovery from heart surgery is not an impairment with a "permanent or long term" impact. *See Toyota*, 534 U.S. at 198.

Even if Transocean believed Molina's recovery from surgery could last for more than eight weeks, that does not raise a fact issue under the ADA.   "[I]mpairments while recovering from surgery are not evidence of a permanent disability." *Gutridge v. Clure*, 153 F.3d 898, 902 (8th Cir. 1998) (citing *Heintzelman v. Runyon*, 120 F.3d 143, 145 (8th Cir.1997)); *see also Sutton v. Lader*, 185 F.3d, 1203, 1209 (11th Cir. 1999) ("A temporary inability to work while recuperating from surgery is not such a permanent or long-term impairment and does not constitute evidence of a disability covered by the Act." (citing *Rogers*, 87 F.3d 755, 759 (5th Cir. 1996) (surgery and recovery not a disability))).   The requirement that impairments be permanent or long-term "covers precisely the typical case of a person who has heart surgery following a heart attack.   And in this day and age, such an experience has little or no long-term or permanent impact and tends to be of short duration."  *Curran v. All-Waste Sys., Inc.*, No. 96 Civ. 2463, 1997 WL 228196, at *15 (S.D.N.Y. Mar. 7, 1996).

Molina's argument also fails because there is no evidence that Transocean believed that his impairment substantially limited a major life activity.   "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995) (quoting 29 C.F.R. § 1630.2(I)).   A plaintiff "must also show that the limitation on the major life activity is substantial." *Hinojosa*, 128 F. App'x at 366.   "Disability" requires a plaintiff to be "*prevented* or even *severely restricted* from performing" the activities of "daily living." *Id.* at 367.   "The central inquiry must be whether the claimant is unable to perform the variety of tasks central to most

14

people's daily lives," rather than on "the impairment's effect in the workplace." *Toyota*, 534 U.S. at 185.  "An employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 807 n.10 (5th Cir. 1997) (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993)).  If a plaintiff asserts that his employer regarded him as substantially limited in the major life activity of working, he must demonstrate that the employer "believed he was unable to work in a broad class of jobs." *Rodriguez*, 436 F.3d at 475 (quoting *Sutton v. United Air Lines. Inc.*, 527 U.S. 471, 491 (1999)) (holding that the plaintiff was regarded as disabled because his employer believed that he was not qualified for any other job at its plant).  It is insufficient to show that an employer believes the plaintiff cannot perform a particular job.  *Collins v. Saia Motor Freight Lines, Inc.*, 144 F. App'x 368, 371  (5th Cir. 2005) (holding that evidence that plaintiff's perceived disability affected three specific types of positions was "insufficient to establish a broad range of employment")*; Mason v. United Air Lines, Inc.,* 274 F.3d 314, 317 (5th Cir. 2001) (holding that the employer, who determined that the plaintiff's limitations prevented him from performing only his job and not other jobs with different requirements, did not regard plaintiff as disabled); *Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 52 (5th Cir. 1997) (holding that the position of an outside rig worker does not constitute a broad class of jobs).  Molina has not identified evidence that Transocean believed that he "was unable to work in a broad class of jobs." *Rodriguez*, 436 F.3d at 475 (quoting *Sutton*, 527 U.S. at 491).  There is no evidence that Transocean believed Molina would be unable to perform a broad class of jobs after his recuperation period ended.

The undisputed summary judgment evidence shows that as a matter of law, Transocean did

not regard Molina as disabled under the ADA.[4]  Transocean's motion for summary judgment is granted.

## IV.  Conclusion

Transocean's motion for summary judgment is granted.  Final judgment is entered by separate order.

SIGNED on August 3, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[4] When an employee is not disabled or regarded as disabled under the ADA, it is unnecessary to determine whether an employer failed to offer reasonable accommodation.  *See Blanks v. Sw. Bell Commc'ns, Inc.*, 310 F.3d 398, 402 (5th Cir. 2002).  Transocean and Molina each refer to *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 280 (5th Cir. 1998).  The issue in that case was whether an employer must provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment but whom the employer regards as having one.  Molina argues that *Newberry* is dicta and should not be followed.  This argument need not be addressed because the record fails to raise a fact issue as to whether Transocean regarded Molina as disabled.